# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

KOLU STEVENS;
PATRICK GREENHOE; and
CLAUDETTE GREENHOE;
     Plaintiffs,

v.

MILTON L. MACK, JR., in his official
capacity as the Administrator of the
Michigan State Court Administrative Office;
KIM B. MEAD, in his official capacity as Bay
County Probate Court Administrator;
WILLIAM M. HEFFERAN, in his official
capacity as Antrim County Circuit Court –
Family Division Administrator,
     Defendants

_____/

Case No.: 18-cv-757
Honorable Paul L. Maloney

**OBJECTION**

OUTSIDE LEGAL COUNSEL PLC
PHILIP L. ELLISON (P74117)
Attorney for Plaintiffs
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

AMBER L. DAVIS-JOHNSON (P52811)
Attorney for Defendant Mead
515 Center Ave., Ste. 402
Bay City, MI 48708
(989) 895-4131
johnsona@baycounty.net

HEATHER S. MEINGAST (P55439)
MI DEPT ATTORNEY GENERAL
Attorney for Defendant Mack
P.O. Box 30217
Lansing, MI 48909
(517) 373-4875
meingasth@michigan.gov

GREGORY R. GRANT (P68808)
Cummings McClorey Davis & Acho
Attorneys for Dfs Hefferan/Mead
310 W Front Street, Suite 221
Traverse City, MI 48681-2800
(231) 922-1888
ggrant@cmda-law.com

## PLAINTIFFS' CORRECTED[1] OBJECTION
## TO THE REPORT AND RECOMMENDATION

---

[1] This corrected filing is made due to a scrivener's error as the proper copy did not generate correctly into the final PDF document which was sought to be submitted to the Court.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

NOW COMES Plaintiffs KOLU STEVENS, PATRICK GREENHOE, and CLAUDETTE GREENHOE, by counsel, and objects to the *Report and Recommendation* offered by Magistrate Kent on two primary grounds.[2] The first is the misapplication of the *Rooker-Feldman* doctrine. The second is the error in finding no plausible right(s) of access to court records under the First Amendment contrary to, among others, *Doe v. Pub. Citizen*, 749 F.3d 246 (4th Cir. 2014). For the reasons outlined herein, the *Report and Recommendation* suggesting dismissal must be overruled and instead the motions by Defendants be denied.

**BACKGROUND**[3]

Plaintiffs Kolu Stevens, Patrick Greenhoe, and Claudette Greenhoe (collectively referred to as "Plaintiffs") were parties in two unrelated and fully completed state court proceedings. **Am. Compl., ECF No. 2, ¶¶9, 30.** Each sought to access, review, and make copies of <u>A</u>udio <u>C</u>ourt <u>R</u>ecordings [hereinafter "ACRs"] which consist of official digital audio records of their state court proceedings made concurrent with proceedings before the courts (instead of a court reporter). *Id.* **at ¶¶22, 40.** The reason, which is legally irrelevant, was to check if the transcripts made from those recordings were accurately done. Each suspected major errors—possibly intentionally so.

Plaintiff Kolu Stevens made a formal demand "to inspect and reasonably make (or obtain) crisp copies of the audio records of the proceedings of the case" from the Antrim County Circuit Court administrator, William Hefferan. **Stevens Demand, ECF No. 2-4,**

---

[2] Defendants raised *Rooker-Feldman*, *Younger* abstention, *Pullman* abstention, qualified immunity, superintending control under the Michigan Constitution, failure to state a claim, and exhaustion of state remedies. The magistrate only addressed *Rooker-Feldman* and failure to state a claim. It also expressly rejected any available qualified immunity to these Defendants. **R&R, ECF No. 33, PageID.391, fn.6.**

[3] At the pre-answer Rule 12(b)(6) stage, all the allegations in the Amended Complaint are deemed true and viewed in the light most favorable to Plaintiffs. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

2

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

**PageID.64-65.** Administrator Hefferan denied access or copies based upon Antrim County Circuit Court Administrative Order 2015-1. **Hefferan Letter, ECF No. 2-5, PageID.66.** Plaintiff Patrick Greenhoe, and Claudette Greenhoe also made a demand "to inspect and make or obtain crisp copies of the audio recordings of the proceedings" from the Bay County Probate Court administrator, Kim Mead. **Greenhoe Demand, ECF No. 2-1, PageID.55-56.** Just like Hefferan, Administrator Mead denied access to the audio records based upon the similarly worded Bay County Probate Court Administrative Order 2014-01J. **Mead Letter, ECF No. 2-2, PageID.59.**

Both of these local administrative orders [hereinafter "LAOs"] were similarly worded because they were issued at the request and direction of the Michigan Supreme Court Administrator, who is also sued in his official capacity, for his requirement of the model LAO known as Model LAO 8.[4] **Am. Compl., ECF No. 2, ¶60.**

The law is "well established" that there is a qualified right of public access to court records via the First Amendment.[5] *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014) ("It is well settled that the public and press have a qualified right of access *to judicial documents and records*…"); see also *Tri-Cty. Wholesale Distribs., Inc. v. Wine Grp., Inc.*, 565 Fed. Appx. 477, 490 (6th Cir. 2012) (Gwin, J., concurring) ("The First Amendment

---

[4] The Court dismissed the MSCAO pursuant to the parties' stipulation due to its post-lawsuit invocation of Eleventh Amendment sovereign immunity by MSCAO. See **Order, ECF No. 11.**

[5] See also *Hartford Courant Co. v. Pellegrino*, 371 F.3d 49, 57 (2nd Cir. 2004) ("[T]he media and the public possess a qualified First Amendment right to inspect docket sheets, which provide an index to the records of judicial proceedings."); *United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997) ("A number of circuits have concluded that the logic of [*Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 7-9, (1986) (establishing a First Amendment right of access to preliminary hearings in state criminal cases)] extends to at least some categories of court documents and records, such that the First Amendment balancing test there articulated should be applied before such qualifying documents and records can be sealed." (citations omitted)), cert. denied, 522 U.S. 1142 (1998); *Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 659 (3rd Cir. 1991) ("the First Amendment, independent of the common law, protects the public's right of access to the records of civil proceedings"); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1177 (6th Cir. 1983) (implying a First Amendment right of access to court documents), cert. denied, 465 U.S. 1100 (1984).

access right extends to court dockets, records, pleadings, and exhibits, and establishes a presumption of public access that can only be overcome by specific, on-the-record findings that the public's interest in access to information is overcome by specific and compelling showings of harm."). "The right of public access springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny." *Doe*, 749 F.3d at 265. "Anyone who seeks and is denied access to judicial records sustains an injury." *Id.* at 263.

The right of public access is "rooted in the public's First Amendment right to know about the administration of justice." *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 26 (2nd Cir. 1994). "Any attempt to maintain secrecy, as to the records of this court, would seem to be inconsistent with the common understanding of what belongs to a public court of record, to which all persons have the right of access." *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 474 (6th Cir. 1983) (quoting *Ex Parte Drawbraugh*, 2 App.D.C. 404 (1894)). Plaintiffs allege (and Defendants do not dispute) that the audio recordings of court proceedings made and kept by the state courts are "court records." Mich. Ct. R. 8.119(F).

As alleged, Antrim County Circuit Court Administrative Order 2015-1, Bay County Probate Court Administrative Order 2014-01J, and Model LAO 8 all failed to have any specific on-the-record findings demonstrating that closure of public access to the ACRs is essential to preserve higher values and is narrowly tailored to serve that interest under the required "court access" test via *Press-Enterprise Co. v. Superior Court of Cal., Riverside Cty.*, 464 U.S. 501, 510 (1984). **Am. Compl., ECF No. 2, ¶64.**

Plaintiffs sued premised entirely on the First Amendment. **Am. Compl., ECF No. 2.** The question is whether the First Amendment allows court administrators (i.e. Defendants), in these circumstances, to totally bar public access to the ACRs without specific, on-the-record findings that the public's interest in access to these court records is overcome by specific and compelling showings of harm?[6]

Defendants each filed a pre-answer motion to dismiss (or a motion that was mislabeled but construed by the magistrate as a motion to dismiss) asserting various defenses and immunities. **R&R, ECF No. 33, PageID.377.** Following briefing, the motions went unanswered for nearly 500 days. This Court referred the matter to the magistrate judge. **Text-Only Order, 08/29/2019.** On February 21, 2020, the assigned magistrate issued a *Report and Recommendation*. After recounting the factual background, the magistrate correctly summarized (but oversimplified) that—

> The crux of plaintiffs' claim is that if a local court (such as the Antrim County Circuit Court or the Bay County Probate Court) opts to not permit access to ACRs then "it is violating the First Amendment. Plaintiffs allege that the local courts' decisions not to permit access to ACRs was a violation of their First Amendment rights or part of a "general conspiracy" to violate their First Amendment rights.

**R&R, ECF No. 33, PageID.381.** The magistrate went on to correctly explain that—

> plaintiffs ask for "an order enjoining Defendants from refusing the ability of Plaintiffs KOLU STEVENS, PATRICK GREENHOE and CLAUDETTE GREENHOE to inspect and reasonably make (or obtain) crisp copies of the audio recordings of the proceedings (i.e. the ACRs) held from the *Kuflewski* Case and the *Stevens* Case to the extent not prohibited pursuant to the Eleventh Amendment to the United States Constitution[.]" In addition, plaintiffs ask that "[t]o the extent Antrim County Circuit Court Administrative Order 2015-1, Bay County Probate Court Administrative Order 2014-01J, and/or Model LAO 8 precludes access or to reasonably make copies of ACRs held from the *Kuflewski* Case and the *Stevens* Case, enter a declaratory judgment finding Antrim County Circuit Court

---

[6] None of the relevant proceedings of the state courts, when audio recorded to make the ACRs, were closed to the public, held in chambers, or placed under seal or under a case-specific protective order. **Am. Compl., ECF No. 2, ¶¶17-19, 36-38.**

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

Administrative Order 2015-1, Bay County Probate Court Administrative Order 2014-01J, and/or Model LAO 8 violates the First Amendment[.]"

**R&R, ECF No. 33, PageID.381.** Not stated (but correctly implied), the federal lawsuit does not ask this Court, in any way, to set aside or alter the state court judgments previously issued against Plaintiffs Stevens or the Greenhoes.

Taking up first the issue of what exhibits and affidavits could be considered in a motion to dismiss, Plaintiffs have no objection to the magistrate's legal conclusions even though less than idyllic.[7] It correctly excluded from consideration the affidavits which cannot be considered in a Rule 12(b)(6) motion.

However, the magistrate recommended dismissing this case on *Rooker-Feldman* grounds and for the lack of a First Amendment right. As argued below, this was in error. However, as a preliminary matter, the magistrate correctly recounted that 42 U.S.C. § 1983 "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law" citing *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004).

**R&R, ECF No. 33, PageID.387.** There is no dispute that Plaintiffs are doing just that as ones "who seek[] and [was] denied access to judicial records"—via the First Amendment. *Doe*, 749 F.3d at 263; **Am. Compl., ECF No. 2.**

However, the magistrate then mis-framed the issue when it concluded "the issue before the Court is whether plaintiffs have a First Amendment right to inspect and make 'crisp copies of the audio recordings' of their court proceedings in addition to receiving the transcripts provided by the court reporters." **R&R, ECF No. 33, PageID.387-388.** It

---

[7] The magistrate placed the burden on Plaintiffs to show why Defendants attaching exhibits not included with the complaint was improper. **R&R, ECF No. 33, PageID.383-387.** In actuality, the burden is on the Defendants.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

then concludes that "defendants' refusal to provide copies of the real-time audio recording of proceedings [ACRs]" does not violate the First Amendment right recognized in *Press Enterprise*. ***Id.* at PageID.389.** It further frames the issue as being that "plaintiffs have no First Amendment right to receive a perfect transcript of their court proceedings"—a position Plaintiffs never took. ***Id.* at PageID.390.**

Moreover, the magistrate concludes that "plaintiffs are attempting to collaterally attack their adverse rulings from the state courts by claiming that the transcripts upon which the state courts relied upon were inaccurate." ***Id.* at PageID.391.** But again, this is not true, not the claim, and never a position the Plaintiffs took in this litigation. The magistrate, looking to the unpublished case *Abercrombie*, hinted to the *Rooker-Feldman* doctrine to support a recommended dismissal on the pleadings. ***Id.* at PageID.390-391.** As argued below, *Rooker-Feldman* absolutely does not apply.

In short, the analysis undertaken and recommended by the magistrate was contrary to law and contrary to Plaintiffs' well-pled allegations. This objection now follows.

## LEGAL STANDARD

This Court's review is *de novo.* See 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); see also W.D. Mich. LR 72.3(b). The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations of the magistrate. W.D. Mich. LR 72.3(b). It may recommit the matter to the magistrate with instructions. *Id.*

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

**ARGUMENT**

Plaintiffs object to the errors by the magistrate when recommending dismissal: it misused the *Rooker-Feldman* doctrine and erred in finding no plausible Section 1983 claim for right of access to court records under the First Amendment.

**I.** **_Rooker-Feldman_ does not apply.**

**A.** **The _Rooker-Feldman_ doctrine only applies if a federal court is asked to reverse or modify a contested state court final judgment.**

The *Report and Recommendation* confuses the role of *Rooker-Feldman* to the circumstances of this case. As Judge Jeffrey Sutton on the Sixth Circuit Court of Appeals recently commented in oral argument on an appeal from another case from this Court: "I think *Rooker-Feldman* has no value unless your name is Rooker or Feldman." Oral Arg., *VanderKodde v. Mary Jane M. Elliott, P.C.,* CA6 Case No. 19-1091, *available at* https://bit.ly/2P3nsN9 at 05:54. He is right. Those who invoke it "hang their hat on a dying doctrine." *Pyankovska v. Abid*, 2020 U.S. Dist. LEXIS 18544, at *4 (D. Nev., Feb. 5, 2020).

The Supreme Court has explained the *Rooker-Feldman* doctrine is "narrow" and solely confined to federal cases "brought by [1.] state-court losers complaining of injuries [2.] caused by state-court judgments [3.] rendered before the district court proceedings commenced and [4.] inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Where the *Report and Recommendation* gets confused is that the federal case must *explicitly* be seeking to vacate a state court judgment as part of its prayer for relief. *Van Hoven v. Buckles & Buckles, PLC*, 947 F.3d 889 (6th Cir. 2020) (pagination not yet set). It goes "no further." *Thana v. Bd. of License Comm'ners*, 827 F.3d 314, 319 (4th Cir. 2016). *Rooker-Feldman* "does not bar suits that challenge actions or injuries *underlying* state court decisions…

8

rather than the decisions themselves." *Allen v. DeBello*, 861 F.3d 433, 438 (3rd Cir. 2017).

Instead, the doctrine *only* applies when the party seeking relief in federal court is

*expressly* asking the federal court to "reverse or modify" an actual contested state court

final judgment. *Adkins v. Rumsfeld*, 464 F.3d 456, 464 (4th Cir. 2006).  The Sixth Circuit

explains the technical difference—

> Appellate review — the type of judicial action barred by *Rooker-Feldman* —
> consists of a review of the proceedings already conducted by the lower tribunal to
> determine whether it reached its result in accordance with law. When, in contrast,
> the second court tries a matter anew and reaches a conclusion contrary to a
> judgment by the first court, *without concerning itself with the bona fides of the prior
> judgment (which may or may not have been a lawful judgment under the evidence
> and argument presented to the first court)*, it is not conducting appellate review,
> regardless of whether compliance with the second judgment would make it
> impossible to comply with the first judgment.

*Coles v. Granville*, 448 F.3d 853, 858-859 (6th Cir. 2006) (quoting *Bolden v. City of

Topeka*, 441 F.3d 1129, 1143 (10th Cir. 2006)) (emphasis added)

Take, for example, *Skinner*. Skinner, a convicted murderer, twice brought actions

in Texas state court for DNA testing of untested biological evidence. The Texas courts

ruled against him. He then sued in federal court alleged that Texas, via the same

prosecutor, violated his Fourteenth Amendment right to due process by refusing to

provide for the DNA testing he requested. The prosecutor invoked *Rooker-Feldman.* The

Supreme Court rejected the doctrine's applicability. According to the Supreme Court,

because Skinner's federal case does not explicitly challenge the adverse state-court

judgment but rather challenges the Texas statute as authoritatively construed by the

same court underlying the decision, federal courts are not jurisdictionally barred.

Federally challenging a statute, rule, or practice governing the state court's prior decision

is not barred by *Rooker-Feldman* and a federal court has jurisdiction to entertain the suit.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

9

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

*Skinner v. Switzer*, 131 S. Ct. 1289, 1297-1298 (2011) (citing *Exxon,* 544 U.S. at 292-293). This true even if "the same or a related question was earlier aired between the parties in state court." *Id.*

Plaintiffs are in the same vein as *Skinner*. Their prayer for relief is not seeking to "reverse or modify" any state court final judgments (if there even is one, see *infra*) but rather the practice (or judicial legislation) of refusing access to public court records. The Court can render a judgment on the First Amendment violation without concerning itself with the bona fides of any prior judgment. *Coles*, 448 F.3d at 858-859. The source of Plaintiffs' harm is not a final adjudicated judgment from the state court cases but rather by the actions of refusing access to the ACRs or by local administrators following unconstitutional local administrative orders (i.e. judicial legislation).

### B. The source of the injury are local administrative orders which is not a final judgment under *Rooker-Feldman*.

*Rooker-Feldman*'s bar only applies upon the issuance of "final state court judgments" or interlocutory orders that "are effectively final" that can be appealed to the US Supreme Court. *Malhan v. Sec'y, U.S. Dep't of State*, 938 F.3d 453, 460 (3rd Cir. 2019). The local administrative orders being challenged in this case are not such judgments but judicial legislation. See *Hoover v. Wagner*, 47 F.3d 845, 849 (7th Cir. 1995). A court promulgating a rule or issuing an administrative order, outside of a contested case, is undertaking legislative activity. *Alia v. Michigan Supreme Court*, 906 F.2d 1100, 1102 (6th Cir. 1990) (collecting cases). Because Antrim County Circuit Court Administrative Order 2015-1, Bay County Probate Court Administrative Order 2014-01J, and/or Model LAO 8 are enacted "judicial legislation" and are not judgments—a required element under *Exxon*—the *Rooker-Feldman* doctrine does not apply.

C.      **The recommendation vis-à-vis *Rooker-Feldman* must be overruled.**

The magistrate committed error in attempting to use *Rooker-Feldman* as a basis to support a dismissal recommendation. Such must be overruled.

## II.    Plaintiffs have pled viable First Amendment claims.

The *Report and Recommendation* also errors in not addressing the correct constitutional issue raised by Plaintiffs and not viewing the allegations in the light most favorable to Plaintiffs. *DirecTV,* 487 F.3d at 476. The First Amendment claim is not about a perfect transcript; it is about denial of access to review and/or copy public court records, the ACRs.

### A.      This is a First Amendment right-of-access to court records case.

The First Amendment bars the government from banning access to the courts as well as the court's records in the absence of specific, on-the-record findings that the public's interest in access to information is outweighed by a compelling articulable showing of specific articulable harm. Here, the audio recordings of judicial proceedings are court records and, in the absence of a narrowly tailored interest that is essential to preserve some sort of higher values, totally barring access to the court records violates the First Amendment.

Here, Plaintiffs sought public access to inspect and copy particular "court records," i.e. the ACRs. **Stevens Demand, ECF No. 2-4, PageID.64-65; Greenhoe Demand, ECF No. 2-1, PageID.55-56**. The various state court administrators (sued in their official capacities) denied Plaintiffs *any* access citing the existence of LAOs legislated by their respective political entities. **Hefferan Letter, ECF No. 2-5, PageID.66; Mead Letter, ECF No. 2-2, PageID.59**. The local administrative orders lack specific, on-the-record findings that the public's interest in access to information by a compelling showing of specific

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

articulable harm as required by *Press-Enterprise*. **Bay County Probate Court Administrative Order 2014-01J, ECF No. 2-3, PageID.60-63** (lacking any required findings); **Antrim County Circuit Court Administrative Order 2015-1, ECF No. 2-6, PageID.67-70** (lacking any required findings). As such, Plaintiffs have pled the recording sought to be inspected and copied (i.e. the ACRs) are court records and Defendant's action of banning access to them fails to adhere the constitutional protections imposed by the First Amendment against court record denial-of-access. **Am. Compl., ECF No. 2, ¶¶54, 64.** The question becomes whether Plaintiffs have plausibly pled a violation of the First Amendment when court administrators refuse to provide access to court records when improperly deferring to illegal LAOs which *totally and completely* ban the public's access to court records for inspection and copying. The answer is yes.

The key decision Supreme Court decision is *Press-Enter. Co. v. Superior Court*, 464 U.S. 501 (1984), which held for the existence of a First Amendment right of access to court records (in that case being the voir dire transcript). The Supreme Court set the relevant test in *Press-Enterprise*—

> The presumption of openness [to access to court records] may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

*Id.* at 510; see also *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (applying *Press-Enterprise* to public judicial records). If there is a lack of articulated interests and specific findings made, denying access is a per se violation of the First Amendment. *U.S. v. Ochoa-Vasquez*, 428 F.3d 1015, 1030 (11th Cir. 2005) (when denials of access to court records fail to articulate the reason for the closure or the

evidence that supported the need for closure, it "do[es] not comply with our First Amendment jurisprudence" under *Press-Enterprise* and invalidation of the same is immediately required). Plaintiffs have expressly pled that there were no findings made ub the LAOs that closure of access to the ACRs is essential to preserve some sort of higher values and the closure methodology selected—a complete ban—is not narrowly tailored to serve that non-articulated interest. **Am. Compl., ECF No. 2, ¶64.** However, this Court can see that for itself. **Bay County Probate Court Administrative Order 2014-01J, ECF No. 2-3, PageID.60-63** (lacking any required findings); **Antrim County Circuit Court Administrative Order 2015-1, ECF No. 2-6, PageID.67-70** (lacking any required findings). Plaintiffs have also pled that "[b]y denying access and denying access or copies of the ACRs…, Defendants individually and/or in conspiratorial agreement violated the First Amendment rights of Plaintiffs." **Am. Compl., ECF No. 2, ¶66.** Thusly, the actions of the court administrators (even if deferring to LAOs) have been pled to not be adhering the *Press-Enterprise* test when terminating public access to court records and, by extension, violate the First Amendment.

Our own circuit has spoken clearly on the issue regarding required public accessibility of court records. The flagship case is *Brown & Williamson Tobacco Corp v. FTC*, 710 F.2d 1165 (6th Cir. 1983). In *Brown & Williamson*, the district court closed all public access to certain court records without explanation (like done in this case with the ACRs). While the Sixth Circuit recognized that *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978) held "every court has supervisory power over its own records and files," that "supervisory power" or "discretion" to deny access to documents does not, however, imply that courts can "operate without standards." *Brown,* 710 F.2d at 1177.

13

"Basic principles have emerged to guide judicial discretion respecting public access to judicial proceedings [and t]hese principles apply as well to the determination of whether to permit access to information contained in court documents…." *Id.* (emphasis added). After further holding that "[t]he public has a strong interest in obtaining the information contained in the court record," the Sixth Circuit vacated the orders of the lower sealing documents from public access. *Id.*, at 1181. After all, "[o]nly the most compelling reasons can justify non-disclosure of judicial records." *Knoxville*, 723 F.2d at 476. The proponent of sealing records from the public must "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 548 (7th Cir. 2002).

Courts have clearly opined, contrary to the magistrate's conclusion, that the public has a First Amendment right-of-access to judicial records of civil proceedings. *Doe v. Pub. Citizen*, 749 F.3d 246, 261, 268 (4th Cir. 2014) ("It is well settled that the public and press have a qualified right of access *to judicial documents and records*…"); *In re Southeastern Milk Antitrust Litigation*, 666 F. Supp. 2d 908, 915 (E.D. Tenn. 2009) ("There can be no doubt that the public has both a constitutional and a common law presumptive right of access to civil proceedings and judicial records" citing *Brown & Williamson*); *N.Y. Civil Liberties Union v. N.Y. City Transit Auth'y*, 684 F.3d 286, 298 (2nd Cir. 2011) ("the First Amendment guarantees a qualified right of access not only to criminal but also civil trials and to their related proceedings and records"); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1067-70 (3rd Cir. 1984) ("the public and press possess a First Amendment ... right of access to civil proceedings"); *Rushford*, 846 F.2d at 253 ("We believe that the more rigorous First Amendment standard should also apply to documents filed in connection

with a summary judgment motion in a civil case."); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984) ("the policy reasons for granting public access to criminal proceedings apply to civil cases as well"). In other words, "the public's right of access to civil trials *and records* is as well established as that of criminal proceedings and records." *Publicker*, 733 F.2d at 1066 (emphasis added). The reason for this rule is to protect the public "against the government's arbitrary interference with access to important information." *N.Y. Civil Liberties,* 684 F.3d at 298.

Another case which supports the plausibility[8] of this First Amendment claim is *In re Guantanamo Bay Detainee Litigation*, 630 F. Supp. 2d 1 (D.D.C. 2009) wherein a First Amendment challenge to the denial of access to court records (i.e. the unclassified factual returns filed in support of habeas proceedings) was made. In *Guantanamo Bay*, the government sought to bar public access to court documents described as "unclassified factual returns." Certain media outlets intervened claiming the First Amendment "afford[s] the public a qualified right of access to the unclassified factual return." The federal court applied the very same law advocated by Plaintiffs in this case as to the court records: the *Press-Enterprise* test. *Id.* at 9. After applying said test and declaring the government's failure to meet it, the *Guantanamo Bay* Court concluded "that *under the First Amendment* the public has a limited right to access the unclassified factual returns [i.e. court records] in these habeas proceedings." *Id.* at 12 (emphasis added). Others courts have easily followed this logic for court records. See Footnote 5, *supra*; see also *Ochoa-Vasquez*, 428 F.3d at 1030-1031; *Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009); *United*

---

[8] The Court is reminded that this case is at the pleading stage—all that needs to be shown is that a claim is plausible on the pleadings. *Doe v. Baum*, 903 F. 3d 575, 580 (6th Cir. 2018) ("a plaintiff's suggestion is plausible when it contains enough factual content that the court can reasonably infer that the defendant is liable").

*States v. Lanier*, 2019 U.S. Dist. LEXIS 157797, at *3 (S.D. Ill., Sep. 16, 2019) ("there is a constitutional right of access to court records"); *Nixon v. Warner Communications*, Inc., 435 U.S. 589, 597 & fn.8 (1978) (acknowledging "the existence of a common-law right of access to judicial records" and "[t]his common-law right has been recognized in the courts of the District of Columbia since at least 1894.").[9] "The burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons in support of its position." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004) (citing *Press-Enterprise*, 478 U.S. at 15). Defendants are such parties and have not provided the required specific reasons in support of their position or have LAOs which effectuate the same.

Therefore, the only relevant question that should have been before the magistrate is whether Plaintiffs have pled a "plausible" First Amendment claim for denial-of-access to undisputed judicial audio recordings (ACRs)—deemed to be "court records" under Mich. Ct. R. 8.119(F)—when the LAOs clearly fail to meet the *Press-Enterprise* standard. Based on the case law and Amended Complaint, the answer is clearly yes.[10]

**B.      The magistrate's use of *Abercrombie* is in error.**

The magistrate also based his recommendation on *Abercrombie v. Head*, No. 2016-cv-02009, 2018 US Dist. LEXIS 148199 (S.D. Ala. 2016), an unpublished report and recommendation by a federal magistrate from a pro se prisoner case from Alabama. The decision is certainly not binding. It is also not a model of jurisprudential clarity. But

[9] The reason why a First Amendment right of access to records exist is clear. "Public trials play an important role as outlets for 'community concern, hostility, and emotions.'" *Brown & Williamson,* 710 F.2d at 1178. "[P]ublic access provides a check on courts." *Id.* "[O]pen trials promote 'true and accurate fact finding.'" *Id.*

[10] A motion to dismiss is not the time to pre-judge the final merits of a case as "a well-pleaded complaint may proceed even if it strikes a savvy [magistrate]… that a recovery is very remote or unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

more importantly, the claim brought and legal theory used there is completely different than the one brought here.

In *Abercrombie*, a pro se prisoner pled guilty to a state crime and was provided various transcripts to challenge her sentence. She complained that the transcripts were different and were not made in compliance with Alabama's authentication, identification, and certification rules. She sued the court reporter alleging that the courts (by the court reporter) have refused to provide her with proper transcripts so that she can proceed to make her challenges in state court. The prisoner premised her Section 1983 claim on the idea that a lack of correct transcripts violated her First Amendment right to "petition the government for redress of grievances" under the Petition Clause of the First Amendment.[11]  She sought an order from the federal court directing the court reporter defendant to produce the "real, original transcript" and "audio recording form which the transcript was transcribed" because it was denying her ability pursue an appellate case in state court.

While interesting, *Abercrombie* is of no help in resolving the current case. Plaintiffs Stevens and Greenhoes are not making a Petition Clause claim under the First Amendment but an access to judicial records claim (i.e. *Doe*)—a different claim with a different legal standard and different precedent.[12] Moreover, the current Plaintiffs are not asking this Court to direct any court reporter to draft, produce, or made a different transcript or are seeking to pursue an appellate case in state court. Instead, Plaintiffs

---

[11] For a fuller discussion about the Petition Clause, see *McDonald v. Smith*, 472 U.S. 479, 482-485 (1985).

[12] The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

merely want to see review (and possible, copy) the ACR "court records" and are challenging the denial of access to those court records held by the courts (and their administrators) when prohibited access is not based on specific, on-the-record findings that the public's interest in access to information is outweighed by specific and compelling showings of harm—the required First Amendment standard under *Press-Enterprise*. The magistrate's recommendation to resolve the case using the singular distant magistrate decisional precedent when pitted against well analyzed published federal appellate precedent, when making a different claim under a different clause of the First Amendment, was in error. Plaintiffs object and the magistrate's recommendation should be overruled.

### RELIEF REQUESTED

WHEREFORE, the Court is requested to overrule the magistrate's *Report and Recommendation* and instead deny the Defendants' motions to dismiss in full.

Date: February 22, 2020                RESPECTFULLY SUBMITTED:

                /s/ Philip L. Ellison
                **OUTSIDE LEGAL COUNSEL PLC**
                **PHILIP L. ELLISON (P74117)**
                Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I, the undersigned attorney of record, hereby certify that on the date stated below,

I electronically filed the foregoing with the Clerk of the Court using the ECF system which

will send notification of such filing to all counsel or parties of record.

Date: February 23, 2020                    RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
**OUTSIDE LEGAL COUNSEL PLC**
**PHILIP L. ELLISON (P74117)**
Counsel for Plaintiffs