UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

KOLU STEVENS, et al,
    Plaintiffs,

v.

THOMAS P. BOYD, et al,
    Defendants
                                    /

Case No.: 18-cv-757
Honorable Paul L. Maloney

**MOTION**

OUTSIDE LEGAL COUNSEL PLC
PHILIP L. ELLISON (P74117)
Attorney for Plaintiffs
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

AMBER L. DAVIS-JOHNSON (P52811)
Attorney for Defendant Mead
515 Center Ave., Ste. 402
Bay City, MI 48708
(989) 895-4131
johnsona@baycounty.net

HEATHER S. MEINGAST (P55439)
BRYAN W. BEACH (P69681)
MI DEPT ATTORNEY GENERAL
Attorney for Defendant Mack/Boyd
P.O. Box 30217
Lansing, MI 48909
(517) 373-4875
meingasth@michigan.gov
beachb@michigan.gov

GREGORY R. GRANT (P68808)
Cummings McClorey Davis & Acho
Attorneys for Defendants Hefferan/Mead
310 W Front Street, Suite 221
Traverse City, MI 48681-2800
(231) 922-1888
ggrant@cmda-law.com

**MOTION FOR SUMMARY JUDGMENT
AS TO DEFENDANTS MEAD AND HEFFERAN**

      NOW COMES Plaintiffs KOLU STEVENS and CLAUDETTE GREENHOE, by and through counsel, and moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Concurrence to the relief sought by this motion was sought but could not be provided at the time of filing.

1

**CONCISE STATEMENT OF THE ISSUES PRESENTED**

Are Plaintiffs Kolu Stevens and Claudette Greenhoe
entitled to summary judgment on their First Amendment claims
against Defendants William Hefferan and Kim Mead?

**CONTROLLING / APPROPRIATE AUTHORITY FOR RELIEF SOUGHT**

FRCP 56

*Press-Enterprise Co. v. Superior Court of Cal., Riverside Cty.*,
464 U.S. 501 (1984)

**BRIEF IN SUPPORT**

"Public officials owe their allegiance to the Constitution *first*, federal laws *second*, and state laws *third*." *Alleghany Corp v. Haase*, 896 F.2d 1046, 1055 (7th Cir. 1990) (Easterbrook, J, concurring) (emphasis added). The First Amendment to the United States Constitution bars the government from banning access to the courts as well as the courts' records in the absence of specific, on-the-record findings that the public's interest in access to information is outweighed by a compelling articulable showing of specific articulable harm. This is known as the *Press-Enterprise* rule. This case involves a challenge to the local courts' practice of denying access to court records by local government officials when not meeting the *Press-Enterprise* standard. For the reasons outlined here, summary judgment is now warranted.

**BACKGROUND / FACTS**

Under the Michigan Court Rules, audio recordings of court proceedings made and kept by the Michigan courts are "court records." Mich. Ct. R. 8.119(F).[1] A presumptive right to access court records exists under the First Amendment. *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 163-165 (2nd Cir. 2013); see also *Brown & Williamson Tobacco Corp v. FTC*, 710 F.2d 1165 (6th Cir. 1983). By Michigan Court Rule, audio recordings "are subject to access" in accordance with MCR 8.119(H)(2)(b). Under that latter subrule, every local court was required to "adopt an administrative order" to "establish a policy for whether to provide access for records defined in subrule (F) and if access is to be provided, outline the procedure for accessing those record." Mich. Ct. R. 8.119(H)(2)(b).

---

[1] Michigan Court Rule 8.108 reconfirms the same by decreeing all such court recordings, regardless of format, "that are created and kept by the court reporter or recorder belong to the court, must remain in the physical possession of the court, and are subject to access in accordance with MCR 8.119(H)." Mich. Ct. R. 8.108(C).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

Those court rules legislated by the Michigan Supreme Court[2] never mandated that complete access be denied by an administrative order.

In fulfillment of that command, the Bay County Probate Court and the Antrim County Circuit Court issued two nearly identical local administrative orders governing their own courts. **Exhibit C; Exhibit F**. Both identically command that access to any audio recordings of court proceedings from their respective court, despite these ACRs[3] expressly being "court records" by court rule, "is not permitted." **Exhibit C, ¶7; Exhibit F, ¶7.** Neither local administrative order made "specific, on-the-record findings that the public's interest in access to information is outweighed by a compelling articulable showing of specific articulable harm." See *id.* Both of these local administrative orders were similarly worded because they were issued at the request and direction of the Michigan Supreme Court Administrator, who is also sued in his official capacity, for its model document known as Model LAO 8. **Sec. Am. Compl., ECF No. 2, ¶60.** [4]

Plaintiffs Kolu Stevens and Claudette Greenhoe (collectively referred to as "Plaintiffs") were parties in two unrelated but fully completed state court proceedings in Michigan. See *In re Stevens*, unpublished order of the Court of Appeals, issued March 15, 2018 (Docket No. 339681); *In re Estate of John H. Kuflewski*, unpublished order of the Court of Appeals, issued Sept 13, 2016 (Docket No. 327848). After each lost their case, Plaintiffs—who have no connection to each other prior to this federal case— separately believed that the transcripts produced on appeal in the state courts contained

---

[2] A court promulgating a rule or issuing administrative order, outside of a contested case, is undertaking legislative activity. *Alia v. Michigan Supreme Court*, 906 F.2d 1100, 1102 (6th Cir. 1990).
[3] *A*udio *C*ourt *R*ecordings [hereinafter "ACRs"]
[4] The Court dismissed the MSCAO pursuant to the parties' stipulation due to its post-lawsuit invocation of Eleventh Amendment sovereign immunity by MSCAO, leaving Defendant Boyd sued in his official capacity. See **Order, ECF No. 11.**

5

serious and non-harmless errors. With that concerning suspicion aroused and as outlined below, each sought to access, review, and make copies of ACRs which consist of the official digital audio recordings of their state court proceedings made concurrent with proceedings before the courts (instead of a court reporter). Each were denied access.

### *Claudette Greenhoe*

Plaintiff Claudette Greenhoe and her husband, Patrick,[5] were parties to litigation before the Bay County Probate Court. Plaintiff Greenhoe submitted to the Bay County Probate Court Administrator, Defendant Kim Mead, a "letter to serve as formal demand… to inspect and reasonably make (or obtain) crisp copies of the audio recordings of the proceedings of the case captioned as *In re Estate of John Kuflewski*, Bay County Probate Court Case No. 14-49781-DE by Friday, April 28, 2017." **Exhibit A.** The demand explained there were "serious and substantial errors in the transcript, to the point of questioning the validity, accuracy, completeness, and faithful production of the legally-created transcripts." *Id.* On April 25, 2017, Defendant Mead responded access to the "[a]udio files are not available pursuant to the [Bay County Probate] Court's Administrative Order 2014-01J" and refused any access or to provide a copy. **Exhibit B.**

### *Kolu Stevens*

Plaintiff Kolu Stevens was a party to litigation before the Family Division of the Antrim County Circuit Court. Also having suspicions of major transcript errors when she took an appeal, Plaintiff Stevens submitted to the Antrim County Circuit Court Administrator, Defendant William Hefferan, a "letter to serve as formal demand… to

---

[5] Also a party to this litigation was Patrick Greenhoe. However, during the pendency of this federal litigation, he passed away. **Suggestion, ECF No. 44, PageID.544-545.** His dismissal is appropriate. Fed. R. Civ. P. 25.

6

inspect and reasonably make (or obtain) crisp copies of the audio recordings of the proceedings of the case captioned as In re Stevens, Antrim County Circuit Court - Family Division Case No. 16-7652-NA by Friday, June 29, 2018 by Friday, June 29, 2018." **Exhibit D.** Like Plaintiff Greenhoe's circumstances, Plaintiff Stevens also explained there were "serious and substantial errors in the transcript, to the point of questioning the validity, accuracy, completeness, and faithful production of the legally-created transcripts." *Id.* On June 22, 2018, Defendant Hefferan also refused access suggesting (without reference to his obligations under the First Amendment) Antrim County Circuit Court's Administrative Order 2015-01 "prohibits me from complying with your request." **Exhibit E**.

This suit followed over two years ago on July 9, 2018. **Compl., ECF No. 1.** Plaintiffs later alleged, by the most recent amended pleading, that a First Amendment right of access extends to certain court records in connection with judicial proceedings, including the real-time audio recording of proceedings (i.e. the ACRs) in the *Kuflewski* case and the *Stevens* case, and that both local administrative orders fail to have any specific, on the record findings, demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest under *Press-Enterprise Co. v. Superior Court of Cal., Riverside Cty.*, 464 U.S. 501, 510 (1984) (hereinafter "*Press-Enterprise I*") and *Press-Enterprise Co. v. Superior Court of Cal., County of Riverside*, 478 U.S. 1, 13-14 (1986). **Sec. Am. Compl., ECF No. 43, PageID.515.** Plaintiffs further allege that by denying access or copies of the ACRs in the *Kuflewski* Case and the *Stevens* Case, Defendants individually and/or in conspiratorial agreement violated the First Amendment rights of Plaintiffs. *Id.* **at PageID.516.** Finally, Plaintiffs allege that "[t]o the extent that any

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

Defendant relied or relies upon Antrim County Circuit Court Administrative Order 2015-1 and Bay County Probate Court Administrative Order 2014-01J, such is unlawful under the First Amendment." *Id.*

## STANDARD OF REVIEW

Summary judgment is appropriate if the documentary evidence show there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a) and (c); *Payne v. Novartis Pharms. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014). The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out the absence of evidence to support the nonmoving party's case. Fed. R. Civ. P. 56(c)(1); *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 543 (6th Cir. 2014). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (quoting *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Once the moving party has carried its burden, the nonmoving party must set forth specific facts in the record showing there is a genuine issue for trial. *Matsushita*, 475 U.S. at 574; *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010). The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252.

## ARGUMENT

**I.    The First Amendment jurisprudence is fully established and clearly violated.**

The ACRs sought by Plaintiffs from each court administrator are undisputedly "court records." Mich. Ct. R. 8.119(F). The law is "well established" that there is a qualified

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

right of public access to court records via the First Amendment.[6] *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014) ("It is well settled that the public and press have a qualified right of access *to judicial documents and records*…"); see also *Tri-Cty. Wholesale Distribs., Inc. v. Wine Grp., Inc.*, 565 Fed. Appx. 477, 490 (6th Cir. 2012) (GWIN, J., concurring) ("The First Amendment access right extends to court dockets, records, pleadings, and exhibits, and establishes a presumption of public access that can only be overcome by specific, on-the-record findings that the public's interest in access to information is overcome by specific and compelling showings of harm."). "The right of public access springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny." *Doe*, 749 F.3d at 265. "Anyone who seeks and is denied access to judicial records sustains an injury." *Id.* at 263.

The right of public access is "rooted in the public's First Amendment right to know about the administration of justice." *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 26 (2nd Cir. 1994). "Any attempt to maintain secrecy, as to the records of this court, would seem to be inconsistent with the common understanding of what belongs to a public court of record, to which all persons have the

---

[6] See also *Hartford Courant Co. v. Pellegrino*, 371 F.3d 49, 57 (2nd Cir. 2004) ("[T]he media and the public possess a qualified First Amendment right to inspect docket sheets, which provide an index to the records of judicial proceedings."); *United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997) ("A number of circuits have concluded that the logic of [*Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 7-9, (1986) (establishing a First Amendment right of access to preliminary hearings in state criminal cases)] extends to at least some categories of court documents and records, such that the First Amendment balancing test there articulated should be applied before such qualifying documents and records can be sealed.") (citations omitted)), cert. denied, 522 U.S. 1142 (1998); *Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 659 (3rd Cir. 1991) ("the First Amendment, independent of the common law, protects the public's right of access to the records of civil proceedings"); *Brown & Williamson,* 710 F.2d at 1177 (implying a First Amendment right of access to court documents), cert. denied, 465 U.S. 1100 (1984).

9

right of access." *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 474 (6th Cir. 1983) (quoting *Ex Parte Drawbraugh*, 2 App.D.C. 404 (1894)).

While a right of access exists, it is "qualified." The First Amendment bars the government from banning access to the courts as well as the court's records. However, court records can be kept from public inspection and copying if "specific, on-the-record findings that the public's interest in access to information is outweighed by a compelling articulable showing of specific articulable harm." *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 510 (1984). This is known as the *Press-Enterprise* standard. It has been applied to both proceedings and court records. *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (applying *Press-Enterprise* to public judicial records); *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 165 (2nd Cir. 2013). If there is a lack of articulated interests and specific findings made, denying access is an automatic per se violation of the First Amendment. *U.S. v. Ochoa-Vasquez*, 428 F.3d 1015, 1030 (11th Cir. 2005). When denials of access to court records fail to articulate the reason for the closure or the evidence that supported the need for closure, it "do[es] not comply with our First Amendment jurisprudence" under *Press-Enterprise* and invalidation of the same is immediately required. *Id.*

### A. There is no material question of fact on the First Amendment violations.

There is no material question of fact that the ACRs sought by Plaintiffs are "court records" subject to public access. There is also no material question of fact that the local administrative orders (which bar any access) fail to have the required "specific, on-the-record findings that the public's interest in access to information is outweighed by a compelling articulable showing of specific articulable harm" under the *Press-Enterprise*

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

10

standard. See **Exhibits C & F.** There were zero findings made in the local administrative order that closure of access to the ACRs is essential to preserve some sort of higher values, and the closure methodology selected—a complete ban—is not narrowly tailored to serve that non-articulated interest. *Id.* Moreover, such a finding is impossible to make even it were done now. As such, Defendants Hefferan's and Mead's denial of access to the sought ACRs violated the First Amendment.[7]

## II. This Court can remedy the First Amendment violations by Defendants Hefferan and Mead.

The remedy Plaintiffs seek includes 1.) enjoining Defendants from refusing the ability of Plaintiffs to inspect and reasonably make (or obtain) crisp copies of the ACRs and entering a declaratory judgment, pursuant to the Declaratory Judgment Act[8], finding Antrim County Circuit Court Administrative Order 2015-1 and Bay County Case Probate Court Administrative Order 2014-01J, and/or Model LAO 8 violates the First Amendment to the United States Constitution; 2.) award nominal damages of $1.00 against each Defendant; and 3.) award attorney fees and costs pursuant to 42 U.S.C. § 1983. The Court is requested to grant all three. This Court is asked to quickly act as "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

### A.     Injunctive and declaratory relief is warranted.

The Eleventh Amendment bars certain relief against states and state officials due to state sovereign immunity. *Maben v. Thelen*, 887 F.3d 252, 270 (6th Cir. 2018).

---

[7] Plaintiff also pled liability both directly and by conspiracy. By granting the "direct" violation theory, the Court need not reach the conspiracy theory and its related claims. Nevertheless, Plaintiffs reserve it if this Court denies summary judgment.

[8] The Declaratory Judgment Act provides a form of relief--an alternate remedy-- in cases of actual controversy to declare the parties' rights and other legal relations. *Saginaw County v STAT Emergency Med.*, 946 F.3d 951, 954 (6th Cir. 2020).

11

However, there is an exception for suits against state officials sued in their official capacity. Under the *Ex Parte Young* doctrine, a federal court can issue prospective injunctive and declaratory relief compelling a state official, in his official capacity, to comply with federal law. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 fn.10 (1989); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 fn.14 (1983); *Puckett v. Lexington-Fayette Urban County Govt.*, 833 F.3d 590, 598 (6th Cir. 2016); *Price v. Medicaid Director*, 838 F.3d 739, 746-747 (6th Cir. 2016). As such, the Eleventh Amendment is no bar to this forward-looking relief.

To date, Defendants have continuously refused to provide access for inspection or copies of the ADRs. Their violations of the First Amendment are current and on-going. Injunctive and declaratory relief is appropriate to halt the federal law violations pursuant to 42 U.S.C. § 1983 by Defendants in both their official and personal/individual capacities.[9]

### B. Nominal damages are also warranted.

When state officials are named in their personal/individual capacity, the Eleventh Amendment is no bar to an award of damages. *Foulks v. Ohio Dep't of Rehab. & Corr.*, 713 F.2d 1229, 1233 (6th Cir. 1983) ("[t]he [E]leventh [A]mendment does not prevent plaintiffs from bringing suits for money damages against state officials provided that the defendants are sued in their individual capacities."); *Maben*, 887 F.3d at 270. "At a minimum, where a deprivation of rights has occurred, nominal damages must be

---

[9] Qualified immunity is not a defense to sought declaratory or injunctive relief. *Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001) ("The defense of qualified immunity protects officials from individual liability for money damages *but not from declaratory or injunctive relief*.").

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

awarded." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 481 (6th Cir. 2007). An award of $1.00 from each Defendant is appropriate and requested.

### 1. Qualified immunity is not available as a defense.

Defendants may attempt to invoke qualified immunity to bar the $1.00 damages award. Qualified immunity is handled as a two-part process. The first step is to determine if there is a violation of a constitutional right; the second is to ask if the right at issue was clearly established when the event occurred such that an objective reasonable officer would have known or should have known that his or her conduct violated it. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).

As to the constitutionality prong of qualified immunity, denying access to court records when the *Press-Enterprise* standard was expressly not met renders their denial unconstitutional under the First Amendment for the reasons previously outlined. The second prong questions whether it was "apparent" that such unconstitutionality was established to a reasonable official. "'General statements of the law' are capable of giving clear and fair warning to officers even where 'the very action in question has [not] previously been held unlawful.'" *Smith v. Cupp*, 430 F.3d 766, 776-777 (6th Cir. 2012) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In other words, "an action's lawfulness can be apparent from [1.] direct holdings, [2.] from specific examples described as prohibited, or [3.] from the general reasoning that a court employs." *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). This can be established from court decisions and even secondary sources. *Barker v. Goodrich*, 649 F.3d 428, 435-436 (6th Cir. 2011). All that needs to be shown is that it was "apparent" to be clearly established. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (emphasis added); see also *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992).

Here, it was clearly established by Supreme Court precedent in *Press-Enterprise* that denying access to records in the explicit absence of any specific, on-the-record findings that the public's interest in access to information is outweighed by a compelling articulable showing of specific articulable harm. In case *Press-Enterprise* was not clear, countless decisions from this Circuit, other circuits, and even in both Eastern and Western District Courts in Michigan reaffirm and uniformly apply that standard (or at least the general principle) regarding access to court records and made this issue beyond any reasonable debate. *Brown & Williamson Tobacco Corp v. FTC*, 710 F.2d 1165 (6th Cir. 1983); *Knoxville News-Sentinel*, 723 F.2d at 476; *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978); *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 548 (7th Cir. 2002); *Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co.*, 951 F. Supp. 679, 691 (W.D. Mich. 1996); *Martis v. Dish Network*, No. 1:13-cv-1106, 2013 WL 6002208, at *1-2 (W.D. Mich. Nov. 12, 2013); *Doe*, 749 F.3d at 265 ("It is well settled that the public and press have a qualified right of access to judicial documents and records…"); *Tri-Cty. Wholesale*, 565 Fed. Appx. at 490 (Gwin, J., concurring); *In re Southeastern Milk Antitrust Litigation*, 666 F.Supp.2d 908, 915 (E.D. Tenn. 2009) ("There can be no doubt that the public has both a constitutional and a common law presumptive right of access to civil proceedings *and judicial records*."); *N.Y. Civil Liberties Union v. N.Y. City Transit Auth'y*, 684 F.3d 286, 298 (2nd Cir. 2011) ("the First Amendment guarantees a qualified right of access not only to criminal but also civil trials and to their related proceedings and records"); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1067-70 (3rd Cir. 1984) ("the public and press possess a First Amendment ... right of access to civil proceedings"); *Rushford*, 846 F.2d at 253; *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir.1984);

*In re Guantanamo Bay Detainee Litigation*, 630 F.Supp. 2d 1 (D.D.C. 2009). There are countless more. Qualified immunity fails.

### III.   Attorney fees and costs.

Section 1988, 42 U.S.C. § 1988, provides for an award of attorney fees and costs when a government or its officials is found to have been violating or is violating the US Constitution and brought to account pursuant 42 U.S.C. § 1983. The Court is requested to grant the remedy but leave the determination of *the amount* (and allocation among the Defendants) to the processes provided Rule 54 of the Federal Rules of Civil Procedure and W.D. Mich. L. Civ. R. 54.1, or by a later (but pre-final judgment) motion for an award of interim attorney fees authorized by *Webster v. Sowders*, 846 F.2d 1032, 1036 (6th Cir. 1988).

### RELIEF REQUESTED

WHEREFORE, Plaintiffs Kolu Stevens and Claudette Greenhoe request this Court to enter an order doing all the following—

a. Dismissing Plaintiff Patrick Greenhoe from this litigation due to his passing;

b. Granting summary judgment in favor of the remaining Plaintiffs but leaving for further development the First Amendment claim against Defendant Boyd;

c. Enjoin Defendants Mead and Hefferan from refusing Plaintiffs' on-going and pending requests for inspection (and reasonably copying) of the audio recordings of the courts' proceedings (i.e. the ACRs) controlled by Defendants from the *Kuflewski* Case and the *Stevens* Case;

d. Declare, pursuant to the Declaratory Judgment Act, that Antrim County Circuit Court Administrative Order 2015-1 and Bay County Probate Court

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

Administrative Order 2014-01J violates the First Amendment to the United States Constitution;

e. Award nominal damages of $1.00 against Defendants KIM B. MEAD and WILLIAM M. HEFFERAN in their personal/individual capacities; and

f. Award all attorney fees, costs, and disbursements permitted by law including 42 U.S.C. § 1988 but leaving the amount to be determined by future proceedings.

| | |
|---|---|
| Date: August 17, 2020 | RESPECTFULLY SUBMITTED:<br><br>/s/ Philip L. Ellison<br>OUTSIDE LEGAL COUNSEL PLC<br>BY PHILIP L. ELLISON (P74117)<br>Counsel for Plaintiffs<br>PO Box 107<br>Hemlock, MI 48626<br>(989) 642-0055<br>pellison@olcplc.com |

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

**CERTIFICATE OF SERVICE**

      I, the undersigned attorney of record, hereby certify that on the date stated below, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel or parties of record.

Date: August 17, 2020    RESPECTFULLY SUBMITTED

/s/ Philip L. Ellison
OUTSIDE LEGAL COUNSEL PLC
BY PHILIP L. ELLISON (P74117)
PO Box 107
Hemlock, MI 48626
(989) 642-0055
(888) 398-7003 - fax
pellison@olcplc.com

Counsel for Plaintiffs

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com