UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KOLU STEVENS, *et al.*,                    )
                              Plaintiffs,                    )
                                                    )            No. 1:18-cv-757
-v-                                        )
                                                    )            Honorable Paul L. Maloney
THOMAS BOYD, *et al.*,                     )
                              Defendants.                   )
_____)

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS AND DENYING PLAINTIFFS' MOTIONS

As part of their appeals in state court actions, Plaintiffs sought and obtained transcripts of their proceedings. Following their appeals, Plaintiffs sought access to and requested copies of the audio recordings of those same proceedings. Two defendants, administrators of the relevant county courts, denied Plaintiffs' requests. Plaintiffs sued alleging a violation of their right to access court records under the First Amendment. The audio recordings are not sealed, they are just not made available to the public or even the parties. This lawsuit presents the following question: Does the First Amendment's right of access attach to audio recordings of court proceedings when transcripts of those proceedings are available and the individuals seeking access to the recordings were present during the proceedings? The Court concludes that it does not and will grant Defendants' motions.

The parties have all filed dispositive motions. Plaintiffs filed two motions for summary judgment. (ECF No. 71 and 83.) Defendants Hefferan and Mead filed a motion for judgment on the pleadings. (ECF No. 73.) Defendant Mead filed a motion for summary judgment. (ECF No. 86.) The parties generally agree to the facts.

## I.

### A.

A motion for judgment on the pleadings under Rule 12(c).  A motion for judgment on the pleadings under 12(c) of the Federal Rules of Civil Procedure applies the same standards as a motion to dismiss under Rule 12(b)(6).  *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007).  "'For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion will be granted only if the moving party is nevertheless clearly entitled to judgment.'" *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (quoting *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008)).

### B.

A trial court should grant a motion for summary judgment only in the absence of a genuine dispute of any material fact and when the moving party establishes it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the burden of showing that no genuine issues of material fact exist.  *Celotex Crop. v. Catrett*, 477 U.S. 317, 324 (1986).  To meet this burden, the moving party must identify those portions of the pleadings, depositions, answers to interrogatories, admissions, any affidavits, and other evidence in the record, which demonstrate the lack of genuine issue of material fact.  Fed. R. Civ. P. 56(c)(1); *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018).  The moving party may also meet its burden by showing the absence of evidence to support an essential element of the nonmoving party's claim.  *Holis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 543 (6th Cir. 2014).  When faced with a motion for

summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Pittman*, 901 F.3d at 628 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).  The court must view the facts and draw all reasonable inferences from those facts in the light most favorable to the nonmoving party.  *Maben v. Thelen*, 887 F.3d 252, 263 (6th Cir. 2018) (citing *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In resolving a motion for summary judgment, the court does not weigh the evidence and determine the truth of the matter; the court determines only if there exists a genuine issue for trial.  *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249).  The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-252.

## II.

The controlling pleading is Plaintiffs' second amended complaint.  (ECF No. 43.)  Plaintiffs plead a single claim, a § 1983 claim for violation of their First Amendment rights based on the denial of access to the audio recordings of their court proceedings.  The following facts are not disputed by either party.  For the Rule 12(c) motion filed by Defendants Hefferan and Mead, the facts find support in the complaint and the documents attached to the complaint.

Plaintiff Kolu Stevens was a party to a lawsuit in the family division court in the Antrim County Circuit Court.  Defendant William Heffernan is the Administrator of the Antrim County Circuit Court and is sued in his official and in his individual capacities.  Stevens suffered an adverse outcome in his lawsuit and filed a notice of appeal with the Michigan

Court of Appeals.  Stevens believes the transcript of the family court proceedings used in the appeal contained errors.  Through counsel, on June 15, 2018, Stevens submitted a letter to Heffernan requesting inspection of and a copy of the audio recording of the proceedings in the family division court action.  (ECF No. 43-4 PageID.528.)  Heffernan denied the request on June 22, 2018, explaining that a Local Administrative Order prohibited him from complying with the request.  (ECF No. 43-5 PageID.530.)  Plaintiffs filed the Local Administrative Order.  (ECF No. 43-6 PageID.531.)

Plaintiff Patrick Greenhoe and Plaintiff Claudette Greenhoe were parties to a probate court action in Bay County.  Defendant Kim Mead is the Administrator of the Bay County Probate Court and is sued in his official and in his individual capacities.  After the Greenhoes suffered an adverse outcome, they filed a notice of appeal with the Michigan Court of Appeals.  The Greenhoes believe that the transcript of the probate court action used in the appeal contains errors.  Through counsel, on April 21, 2017, the Greenhoes submitted a letter to Mead requesting access to the audio recording of the probate court proceedings.  (ECF No. 43-1 PageID.519.)  Mead denied the request on April 25, 2017, explaining that audio files are not available under the probate court's administrative order.  (ECF No. 43-2 PageID.523.)  Plaintiffs filed the Bay Count Administrative Order.  (ECF No. 43-3 PageID.524.)

Defendant Thomas Boyd is the Administrator of the Michigan State Court Administrative Office (SCAO) and is sued in his official capacity only.  The Michigan State Court Administrative Office (SCAO) drafted and proposed a local administrative order governing access, inspection, reproduction and creation of court records.  (ECF No. 43-7

PageID.536.)  Antrim County and Bay County have both adopted some form of the model order created by the SCAO.  The proposed rule created by the SCAO includes the following paragraph.

> 7.  Access to court recordings, log notes, jury seating charts, and other media of court proceedings made pursuant to MCR 8.108 *[select one]* [is permitted in accordance with this order] [is not permitted].

(PageID.539.)  The Antrim County courts and the Bay County courts adopted orders that do not permit access to such court recordings.  The two orders contain the following provision:

> 7.  Access to court recordings, log notes, jury seating charts, and other media of court proceedings made pursuant to MCR 8.108 is not permitted.

(Bay County PageID.527; Antrim County PageID.534.)

### III.

All three defendants raise Eleventh Amendment immunity as a defense to the claims brought against them in their official capacities.

The Eleventh Amendment bars § 1983 claims against the State, its agencies, and its officials when sued in their official capacities for damages.  *Cady v. Arenac Cty.*, 574 F.3d 334, 342 (6th Cir. 2009).  A lawsuit against a government official in his or her official capacity is a suit against the official's office, not the individual office holder.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1978).  Michigan's trial courts are considered arms of the State of Michigan and enjoy the same immunity as the State.  *See Pucci v. 19th District Court*, 628 F.3d 752, 764 (6th Cir. 2010).

All three defendants are considered employees of the state of Michigan.  Defendants Hefferan and Mead are employees of the Michigan trial courts and are considered employees of the State.  *See Judges of the 74th Judicial Dist. v. Bay Cty.*, 190 N.W.2d 219, 224 (Mich. 1971) ("Employees of the district court are employees of the judicial district, an administrative unit of the State's one district court, which in turn is a subdivision of Michigan's one court of justice.  They are not employees of the county, city or other district control unit, even though they are paid by the district control unit."); *see, e.g., Housey v. Macomb Cty.*, 534 F. App'x 316, 325-26 (6th Cir. 2013) (involving a probate court employee).  Defendant Boyd is an employee of the SCAO, a state agency.  *See* Mich. Comp. Laws § 600.151b.

The Eleventh Amendment does not prevent a court from granting declaratory or injunctive relief.  *Pucci*, 628 F.3d at 765.  Under the doctrine outlined in *Ex Parte Young*, 209 U.S. 123 (1908), the Eleventh Amendment does not bar a federal court from granting prospective relief such as ordering a state officer to comply with federal law.  *Thompson v. Harmony*, 65 F.3d 1314, 1320 (6th Cir. 1995); *see Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017) ("The exception set forth in *Ex Parte Young* allows plaintiffs to bring claims for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations, . . . .")  "To determine if *Ex Parte Young* applies, we need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Boler*, 865 F.3d at 412 (cleaned up) (citation omitted).

The Court declines to dismiss Plaintiffs' claim against Defendants in their official capacities based on the Eleventh Amendment.  For the official capacity claims, Plaintiffs seek prospective relief only.  Plaintiffs request the Court issue a declaratory judgment finding that the Antrim and Bay County Administrative Orders violate the First Amendment. (PageID.516-17.)  Assuming the orders violate the First Amendment, this prayer for relief would remedy an on-going violation of federal law as the Administrative Orders have not been changed.  Plaintiffs also request an injunction that would prevent Defendants from refusing to allow Plaintiffs from inspecting and making copies of the audio recordings. (PageID.516.)  Plaintiffs do not seek a declaration that the denial of access to the records was a violation of their rights.  That Plaintiffs allege the denial of access to records violated their First Amendment rights does not require the conclusion that Plaintiffs necessarily seek retroactive relief.

Accordingly, the Court will deny Defendants Hefferan and Mead's Rule 12(c) request for relief from the official capacity claims.  The Court will also deny Defendant Boyd's Rule 56 request for relief form the official capacity claims.

## IV.

All three defendants argue that the First Amendment right of access does not include a right to copies of the recordings of court proceedings where transcripts are available and the individuals requesting access were present.  Plaintiffs insist that a qualified First Amendment provides a right of access to all court records.

This constitutional question thus requires the Court to determine two issues: (1) are the recordings the sort of judicial or court records to which the First Amendment guarantees

at least a qualified right of access? and, if so, (2) were Plaintiffs denied access?  The Court answers both questions in the negative.[1]

## A.

Courts have considered the right of access to court proceedings and to court records under both the common law and under the First Amendment.  *See Nixon v. Warner Comm'ns, Inc.*, 435 U.S. 589, 607-09 (1978); *In re Search of Fair Fin.*, 692 F.3d 424, 429-431 (6th Cir. 2012).  Plaintiffs plead their claim as a violation of the First Amendment and rely on 42 U.S.C. § 1983.  Section 1983 claims remedy violations of federal constitutional and statutory violations, not violations of the common law.  *Lewellen v. Metro. Gov't of* Nashville, 34 F.3d 345, 347 (6th Cir. 1994); *Williams v Barksdale*, 755 F.2d 934 (6th Cir. 1984) (unpublished table opinion) ("Section 1983 does not provide a remedy for common-law torts.") (citing *Baker v. McCollan*, 443 U.S. 137 (1979)).  Plaintiffs, therefore, must prove a violation of their First Amendment rights to access and not a violation of their common law right to access.  For First Amendment purposes, within a courthouse, the public's rights to access information and the media's right to access information about court proceedings are coterminous.  *Warner Comm'ns, Inc.*, 435 U.S. at 609-10.

The Supreme Court has recognized the press and the public's First Amendment right to access or to attend criminal trials, *Globe Newspaper Co. v. Superior Ct. for Norfolk Cty.*,

---

[1]      Defendants previously filed motions to dismiss concerning this claim—asserting qualified immunity—which the Court ultimately denied.  (ECF No. 38 Order Adopting in Part and Rejecting in Part Report and Recommendation.)  The Court acknowledges that the authority cited in the earlier order relied on the common law right of access, rather than the First Amendment's right of access. (PageID.454.)  The distinction ultimately makes a difference.

457 U.S. 569, 603 (1982), *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575-78 (1980), including voir dire proceedings where a jury is selected, *Press-Enterprise Co. v. Superior Ct. of California*, 464 U.S. 501 (1984) (*Press-Enterprise I*). *Waller v. Georgia*, 467 U.S. 39, 45 (1984). These opinions establish a "presumption of openness" for the public's right of access to criminal trials that may be overcome only in rare cases. *Id.* (quoting *Press-Enterprise I*, 464 U.S. at 510).

In *Press-Enterprise Co. v. Superior Ct. of California*, 478 U.S. 1 (1986) (*Press-Enterprise II*), the Supreme Court extended the First Amendment right of access to criminal trials to the preliminary hearings in criminal actions. The Court identified two questions for determining whether a presumption of openness arises, the "experience and logic" test: (1) is there a tradition of accessibility (experience)? and (2) does access play a significant positive role in the actual functioning of the process (logic)? *Id.* at 10-12; *see Cincinnati Gas and Elec. Co. v. Gen. Elec. Co.*, 854 F.2d 900, 903 (6th Cir. 1988); *Applications of Nat'l Broad. Co., Inc.*, 828 F.2d 340, 343-44 (6th Cir. 1987). "Once the First Amendment right of access attaches, it can 'be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *United States v. DeJournett*, 817 F.3d 479, 484 (6th Cir. 2016).

These Supreme Court cases involve the right to attend criminal actions and do not consider a First Amendment right of access to documents or court records. The holdings in these Supreme Court opinions and the reasoning employed have been extended by circuit courts to both court documents in criminal cases and to civil actions and documents in civil actions. The Sixth Circuit has applied the *Press-Enterprise II* test to lawsuits seeking access

to various documents in a criminal action.  *See DeJournett*, 817 F.3d at 484 (applying *Richmond Newspapers* and the *Press-Enterprise* and finding a First Amendment right of access to plea agreements); *In re Morning Song Bird Food Litig.*, 831 F.3d 765, 777-78 (6th Cir. 2016) (finding no First Amendment right of access to objections to presentence reports in a criminal matter); *In re Search of Fair Finance*, 692 F.3d at 430-33 (finding no First Amendment right of access to documents in search warrant proceedings).  The Sixth Circuit has also extended the First Amendment right of access to civil actions.  *See In re Search of Fair Fin.*, 692 F.3d 424, 429 (6th Cir. 2012) ("Notwithstanding its origin in criminal proceedings, courts have also applied the 'experience and logic' test to determine whether a First Amendment right of access exists in a wide variety of other contexts.") (collecting cases); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1178 (6th Cir. 1983) ("The Supreme Court's analysis of the justifications for access to the criminal courtroom apply as well to the civil trial.") ; *accord Courthouse News Serv. v. Planet*, 947 F.3d 581, 590 (9th Cir. 2020); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004).

## B.

Most courts presented with right of access claims consider both the common law and the First Amendment.  The common law right of access "extends to all judicial documents and records" while the First Amendment "secures a right of access 'only to particular judicial records and documents."  *Doe v. Pub. Citizen*, 749 F.3d 246, 266 (4th Cir. 2014) (citation omitted).  In their discussion of the common law right of access, those courts describe what constitutes a judicial record to which the common law right of access applies.  *See In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001) ("Whether or not a document or record

is subject to the right of access turns on whether that item is considered to be a 'judicial record.'").  "[N]ot all documents filed with courts are judicial records. . . . whether something is a judicial record depends on the role it plays in the adjudicatory process."  *SEC v. American Int'l Grp.*, 712 F.3d 1, 3 (D.C.C. 2013) (cleaned up; citations omitted); *see In re Cendant Corp.*, 260 F.3d at 192 ("The status of a document as a 'judicial record,' in turn, depends on whether a document has been filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings."); *United States v. Kravetz*, 706 F.3d 47, 54 (1st Cir. 2013) (judicial records are "those materials on which a court relies in determining the litigants' substantive rights.  Such materials are distinguished from those that relate merely to the judge's role in management of the trial and therefore play no role in the adjudicative process.") (cleaned up; citations omitted); *Cable News Network, Inc. v. FBI*, 984 F.3d 114, 118 (D.C.C. 2021) ("Whether something is a judicial record depends on the role it plays in the adjudicatory process.  If the goal in filing the document is to influence a judge's decisionmaking, the document is a judicial record.") (citations omitted).

The audio recordings of court proceedings are not "judicial records" to which the common law right of access attaches.[2]  The audio recordings of court proceedings are not

---

[2]   The Court acknowledges that the Michigan Court Rules do consider the audio recordings to be "court records."  The Michigan Court Rules include a definition of "court records."

> (1) Court records are defined by MCR 8.119 and this subrule.  Court records are recorded information of any kind that has been created by the court or filed with the Court in accordance with Michigan Court Rules. . . . .

Mich. Ct. R. 1.109(A).  Rule 1.109(A)(1) contains specific references to "recordings."  Subrule (A)(1)(A) states that court records "include, but are not limited to . . . (ii) documents, recordings, data, and other recorded information created or handled by the court, . . . ."  And, subrule (A)(1)(b) (ii) clarified that recordings refers to, among other things, "audio and video recordings[.]"  Under

documents or other materials that played any role in the adjudicative process.  The audio recordings are not motions or briefs filed by the parties nor are they court opinions or orders. The audio recordings are not exhibits or other information relied upon by the parties to advance their claims and defenses.

Some courts have applied the "experience and logic" test from *Press-Enterprise II* to requests for access to judicial or court records.  *See Flynt v. Lombardi*, 885 F.3d 508, 512-

---

this rule, audio recordings of court proceedings that are created by the court or handled by the court are court records.

Other court rules affirm the conclusion that audio recordings of court proceedings, created by the court or handled by the court, are considered court records.  The rules include two different provisions concerning the audio recordings of court proceedings, Rules 8.018 and 8.109.  Neither party has informed the Court whether the audio recordings were created by a court reporter or court recorder under Rule 8.108 or by the court itself under Rule 8.109.

Rule 8.108 "prescribes the duties of court reporters and recorders, . . . ."  Mich. Ct. R. 8.108(A).  Although this rule does not specifically mention "recordings," any recordings made by a court reporter or recorder would be a court record.  Subsection (C) provides that "[a]ll records, as defined in MCR 8.119(F) and regardless of format, that are created and kept by court reporters and recorders, belong to the court, must remain in the physical possession of the court, and are subject to access in accordance with MCR 8.119(H)."  *Id.* 8.108(C).  Rule 8.119(F), which is also referred to in Rule 1.109, states

> Court recordings, log notes, jury seating charts, and all other records such as tapes, backup tapes, discs, and any other medium used or created in the making of a record of proceedings and kept pursuant to MCR 8.108 are court records and are subject to access in accordance with subrule (H)(2)(b).

Mich. R. Ct. 8.119(F).  Accordingly, audio recordings of court proceedings made by court reporter or court recorders are court records under Rule 1.109(A)(1)(a)(ii) and Rule 8.119(F).

In the Court's experience, not all state court proceedings involve a court reporter or recorder. For the last thirty-five years, Rule 8.109(A) permits state trial courts to use audio and video equipment for making the record of court proceedings and further requires that the recording devices meet standard published by the SCAO.  Mich. R. Ct. 8.109(A).  The 1991 staff comments for Rule 8.109 clarify that the requirement applies "if such recordings are used to make the official record of proceedings."[2]  *See People v. Wright*, No. 222700, 2001 WL 718615, at *1 (Mich. Ct. App. June 28, 2001) (unpublished per curiam opinion) ("In 1991, our Supreme Court amended MCR 8.109(A) to specifically allow the use of videotaping devices to make the official record, as was done in this case.  Therefore, the videotape *was* the official record, no further procedural safeguards were necessary.") (emphasis in original).  Recording made under 8.109 are court records under Rule 1.109(A)(1)(a)(ii) as those records are created by and handled by the court.

13 (8th Cir. 2018) (finding no First Amendment right of access to sealed judicial records in a case about Missouri's death penalty protocols); *New Jersey Media Grp. Inc. v. United States*, 836 F.3d 421, 429-34 (3d Cir. 2016) (finding no First Amendment right of access to a letter authored by prosecutors in the "Bridgegate" litigation in which the prosecutor purportedly identified unindicted coconspirators and reasoning that the letter was part of the general discovery process and was not akin to bill of particulars); *In re Application of the United States*, 707 F.3d 283, 29192-(4th Cir. 2013) (finding no First Amendment right of access to § 2703(d) orders and proceedings under the Stored Communications Act); *Kravetz*, 706 F.3d at 53-54 (finding no First Amendment right of access to Rule 17(c) subpoenas). For First Amendment access challenges to judicial documents, the Second Circuit considers whether the documents are derived from or are a necessary corollary of the capacity to attend the proceedings, applying the principle that "[o]nly those documents necessary to understand the merits of a civil . . . proceeding are covered by the First Amendment's presumptive right of access." *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 164 (2d Cir. 2013); *see Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006).

Plaintiffs have not put forth evidence to support either the experience prong or the logic prong. The Court is unaware of any tradition of public access to the court stenographer's or court reporter's notes regardless of the type of court proceeding. And, audio recording devices had not yet been invented when this country adopted the First Amendment. For the second prong, public access to an audio recording of a court proceeding does not play a significant positive role in the actual functioning of the court proceeding. Public access to the proceeding itself plays a significant positive role. Access to

audio recordings of the proceeding would be largely redundant.  Nor can Plaintiffs prevail using the Second Circuit's approach.  Even if the state court set forth the merits determination from the bench and did not reduce the resolution of the issues to paper, Plaintiffs have a transcript of the proceeding.  The audio recordings are not records to which the First Amendment provides a right of access.  Plaintiffs' concerns about transcript errors are addressed by the credentials and other professional requirements of court reporters who prepare the transcripts from recordings.  *See* Mich. R. Ct. 8.108(G).  To the extent that Plaintiffs maintain an error occurred in the preparation of their transcripts, they can have another transcript prepared by a different court reporter.

## C.

Finally, a number of courts have considered media requests for access to and copies of recordings played at a criminal proceedings.  Overwhelmingly, the courts have rejected the requests and have frequently found that the First Amendment right of access does not extend to requests for copies of recordings played at the proceedings.  The reasoning used in these opinions consistently reflect the conclusion that the moving parties have not been denied access.  Attendance as access effectively undermines the risks and dangers associated with secret proceedings.  The Supreme Court explained that the "knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power."  *In re Oliver*, 333 U.S. 257, 270 (1948).

In *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978) the Court considered the scope and circumstances of "a common law right of access to judicial

14

records[.]"  The respondent, the media, sought copies of the Nixon tapes that were admitted into evidence at the trial of President Nixon's former advisors.  Approximately 22 hours of recorded conversations were played at the trial and the reels of tape were admitted into evidence.  "The District Court furnished the jurors, reporters, and members of the public in attendance with earphones and with transcripts prepared by the Special Prosecutor." *Id.* at 593.  Several media companies later filed a motion with the district judge seeking permission to copy, broadcast and sell the recordings played at the trial.  The court denied immediate release of the tapes.  The Court explained that the Presidential Recording Act created an administrative procedure for processing and releasing presidential materials of historic interest, which would include the recordings.  *Id.* at 603.  For this portion of the opinion, the Court emphasized that it addressed only the application of the common law right to access judicial records.  *Id.* at 607.  Turning to the First Amendment, the Court found that the situation did not implicate any constitutional right to access.  The press was not prevented from publishing the testimony and those in attendance were allowed to listen to the tapes and report what they heard.  *Id.* at 609.  Reporters were also provided transcripts of the tapes. *Id.*  Neither the media nor the public ever had physical access to the recordings.  *Id.*

In *United States v. Beckham*, 789 F.2d 401 (6th Cir. 1986) the media sought permission to make copies of audio recordings that were admitted as evidence and played in the criminal trial, as well as transcripts of the recordings.  The district court denied the request and the media appealed.  The Sixth Circuit found that the district court's denial did not violate the media's constitutional right of access.  *Id.* at 403.  The court distinguished the opportunity to hear the audio recordings at trial from access to the recordings themselves.

*Id.* at 409 (quoting *Warner Communications* and noting that the "passage indicates clearly that there is a difference between an opportunity to hear the tapes and access to the tapes themselves.); *see Putnam Pit, Inc. v. City of Cookeville, Tennessee*, 221 F.3d 834, 841 (6th Cir. 2000) (involving a tabloid and internet journalist who had access to hard copies of parking tickets and wanted the same information in electronic form and finding that "Davidian has no First Amendment right to government information in a particular form, as long as the information sought was made available as required by the First Amendment."). The court concluded, because the public and the media had the opportunity to attend the trial and could report what they observed, including what they heard when the tapes were played, "if a right to copy the tapes and transcripts in this case exists, it must come from a source other than the constitution." *Id.*

At least four other circuit courts have declined to find the First Amendment right of access attaches to audio and video recordings played at a criminal trial. *In re Providence Journal Co., Inc.*, 293 F.3d 1, (1st Cir. 2002) (involving a political corruption criminal case where excerpts of video and audio recordings were played at the trial, denying a newspaper's request for copies of the recordings, applying *Nixon*, and explaining that the "district court has not restricted media access to, or the publication of, any information in the public domain. Indeed, the district court has gone to great lengths to facilitate access to the trial proceedings . . . By affording interested members of the media ample opportunity to see and hear the tapes as they are played for the jury, the court has fulfilled its pertinent First Amendment obligations."); *Fisher v. King*, 232 F.3d 391, 396-97 (4th Cir. 2000) ("The precise question presented by Fisher's as-applied challenge, however, is whether the First

Amendment provides him, as a member of the general public, a right to physical access to an audio tape that was played in open court in a criminal trial, admitted into evidence, and for which he possesses a complete verbatim transcript.  Under the Supreme Court's decision in *Nixon . . .* , the answer to this question is no."); *United States v. McDougal*, 103 F.3d 651, 659 (8th Cir. 1996) (relying on *Nixon*, denying media organizations' physical access to and copies of a video recording of President Clinton used at the trial in the underlying criminal case and holding that "the First Amendment right of access to public information does not extend to the videotape of President Clinton's deposition testimony" where an edited version of the video was played at the trial which was open to the public, the transcript was admitted into evidence and made part of the record, and copies of the transcript were released to the public); *Belo Broad. Corp. v. Clark*, 654 F.2d 423, 426 (5th Cir. 1981) (involving audio recordings of discussions between criminal defendants and FBI operatives that were admitted into evidence at trial, applying *Nixon*, and holding the no First Amendment right of access to the tapes existed for the media).

The Court finds the reasoning in these opinions persuasive.  Certainly, a difference arises between recordings presented as evidence at a trial and recordings of the proceedings themselves.  For Plaintiffs' First Amendment right of access claim, however, that difference lacks significance.  Plaintiffs were present for and participated in the proceedings.  And, Plaintiffs were able to obtain a transcript of the proceedings.  Those two facts satisfy the First Amendment's right of access.  As the Sixth Circuit reasoned in *Putman Pit*, the right guarantees access to information, it does not guarantee the information be provided in a particular form.  In the Court's view, the parties had access to the information contained in

the recordings.   The parties continue to have access to the information though the employment of a certified court reporter who could prepare a new transcript.

Accordingly, the Court concludes that Defendants are entitled to the relief they seek as to Plaintiffs' First Amendment claim.  The Court will grant the Rule 12(c) motion filed by Defendants Hefferan and Mead.  The Court will also grant the Rule 56 motion filed by Defendant Boyd.

## V.

Having found that Plaintiffs do not have a First Amendment right of access to the audio recordings, the Court need not consider Defendant Hefferan and Defendant Mead's request for qualified immunity.  Where the officer does not violate a plaintiff's constitutional rights, the qualified immunity defense becomes moot.  *See Adams v. City of Auburn Hills*, 336 F.3d 515, 520 (6th Cir. 2003) ("Because the Fourth Amendment is not implicated, Adams has not alleged a constitutional violation to support a § 1983 claim.  Without an underlying constitutional violation, the question of whether Backstrom is entitled to qualified immunity is moot."); *Ahlers v. Schebil*, 188 F.3d 365, 374 (6th Cir. 1999) ("As we hold that sufficient probable cause existed, this necessarily means that the arrest complied with constitutional requirements and that Ahlers was not deprived of a constitutional right.  As a result, there is no claim under § 1983, and Defendants have no need for a qualified immunity defense."); *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998) ("In this case, if the court determines that Detective Gabringer had probable cause sufficient to obtain a search warrant, plaintiffs' § 1983 claim fails, and the issue of whether Detective Gabringer receives qualified immunity becomes moot.").

IV.

The Court concludes that Defendants did not deny Plaintiffs' First Amendment right of access.  While the Michigan Rules of Court might consider the audio recordings to be court records, the First Amendment does not consider those same recordings to be judicial records to which the public or press must have some access.  And, even if the recordings are so protected, Plaintiffs were not denied access because they were present during the proceedings, have a transcript of the proceedings, and likely could pay for the preparation of another transcript of the proceedings.

The Court reaches no conclusion about whether the Local Administrative Order is a good idea.  That concern is not before the Court.  The privacy concerns that attend some family court and probate court proceedings likely would not apply here—the request for access was made by the parties themselves.  Frankly, the Court has difficulty finding a justification for denying the parties a copy of the audio recording.  Although the First Amendment might not require the courts to permit access to audio recordings of proceedings, the amendment does not prohibit courts from making copies available.  Even our United States Supreme Court, which has historically resisted cameras in the courtroom, makes audio recordings of its proceedings available through its website.  The Michigan Court of Appeals and the Michigan Supreme Court both have YouTube channels and both archive audio recordings of proceedings, which are available on through their websites.  In the wake of COVID-19 and the attendant health concerns, many local courts followed suit and established their own YouTube channels, including both Antrim and Bay counties (the links

can be found at the Michigan Virtual Courtroom Director on the Michigan Supreme Court's webpage).

## ORDER

For the reasons provided in the accompanying Opinion, the Court **GRANTS** the motions filed by Defendants (ECF Nos. 73 and 86) and **DENIES** the motions filed by Plaintiffs (ECF Nos. 71 and 83).  **IT IS SO ORDERED.**

Date:  November 16, 2021                                  /s/ Paul L. Maloney
                                                         Paul L. Maloney
                                                         United States District Judge